The following opinions were delivered :
By Mr. Justice Sutherland.
This case involves the construction of the 8th section of the usury act, as contained in the revised statutes, 1 R. S. 772. It is as follows : “ Whenever any borrower of any money, goods or things in action, shall file a bill in chancery for a discovery of the money, goods or things in action, taken or received in violation of either of the foregoing provisions, it shall not be necessary for him to pay, or offer to pay any interest whatever on the thing loaned ; nor shall any court of equity require or compel the payment or deposit of the principal sum, or any part thereof, as a condition of granting relief in any case of a usurious loan, forbidden by this chapter.” Previously to the adoption of the revised statutes, the principles upon which a party to a usurious contract could, in a court of equity, compel discovery of, and obtain relief against the usurious premium, were perfectly well settled. Neither discovery nor relief could in any case be obtained in the court of chancery, without a re-payment of the sum actually lent, with lawful interest; because, the borrower could not, in any case, or under any circumstances, be equitably entitled to keep the money which he had actually received from the lender, and for which the lender had received no consideration. He was therefore met by that cardinal maxim of a court of equity, “ that he who asks for equity must do equity,” and could obtain no aid from that jurisdiction, in getting'rid of, or recovering back the amount which had been improperly exacted from him, until he repaid the amount, which in justice and equity was due from him to the defendant. Relief, under such circumstances, where the complainant did not ask for or need a discovery, was refused exclusively upon this principle ; but where he had no legal evidence of the usury, and the object of his bill was to compel the defendant to disclose or admit the fact, he had an ^additional difficulty to encounter, to wit, that a court of equity will not compel a defendant to answer upon oath, and thus became a witness for his adversary and against himself, where such answer may subject him to a criminal proceeding, or to a penalty or forfeiture, or to any loss in the nature of a forfeiture. In such a case, therefore, he was bound to waive the forfeiture and pay the amount actually loaned, not only because it was just and equitable, but in order to guard against the possibility of the defendant’s answer being made the means of subjecting him to a forfeiture.
The statute for the preventing of usury, 1 R. L. 64, did not prescribe the terms upon which relief should be given, or discovery compelled in a court of equity. The first section of that act declared it to be unlawful to take more than seven per cent, per annum for the loan or forbearance of any moneys, and that all bonds, bills, notes, contracts, &c. whereby more than seven per cent, was reserved, &c. should be utterly void. The second section authorized the borrower, within one year, to receive back the usurious excess, and after that period, any other person. The third section established the rates of brokerage, and authorized the excess to be recovered back in the same manner as in the second. The fourth section provided that for the better discovery of the usury, every person liable to be sued for the same by that act, should be compelled to answer upon oath any bill that should be preferred against him in the court of chancery, for discovering the excess so taken by him; and that upon the discovery and re-payment of such excess, he should be discharged from any other punishment, forfeiture or penalty. Before the revision of this statute, then the. law stood thus: Every usurious contract, and every instrument, of whatever kind or description, taken as the evidence of such contract, were absolutely *333 void; and when sued upon such contract, all the borrower had to do was to prove the usury, and no recovery could be had against him; he defeated the recovery, not only of the usurious excess, but of the sum actually loaned. If he had legal and sufficient evidence of the usury, his defence was perfect at law, and he had no occasion to invoke the aid of a court of equity. If the knowledge of the usury was confined to himself and the lender, *then it became necessary for him to go into a court of equity, and by a bill of discovery to call upon the lender to admit or deny the usury. He was then, for the reasons which have already been stated, bound to waive the forfeiture, by paying, or offering to pay the sum actually loaned with interest. And in some cases, where the form of the security was such as to enable the lender to collect it without a suit either at law or in equity, (as a bond and warrant of attorney, or a mortgage,) the borrower, although he had competent evidence of the usury, still, as he had no opportunity, from the form of the proceeding, to avail himself of it at law, was compelled to file his bill, and ask relief in equity. In such a case, also, although ho sought and,required no discovery, a court of equity would not relieve him from the usurious excess, except upon the equitable condition of his repaying the sum actually loaned.
When the revision of our laws was entered upon in 1827, the re visors proposed and recommended to the legislature several very essential alterations in the law as it then existed, upon the subject of usury. They proposed, in the first place, to omit the word contracts, in the section which declared all bonds, bills, notes, &c. wherein or whereby more than seven per cent, was reserved or taken, absolutely void. The effect of which omission would have been, as stated by the revisors, to avoid the security only, but to authorize the lender to recover in all cases the sum actually loaned; and they expressly provided in another section, that the invalidity of the security should not prevent the lender, nor his assignee from recovering such sum. Secondly. They proposed to except from the operation of this section, all negotiable paper in the hands of a bona fide holder for a valuable consideration, who had not, when he took the same, actual notice that it was originally given for an usurious consideration, or upon an usurious contract. Thirdly. They proposed that the usurious lender should in no case, either at law or in equity, be entitled to recover any interest whatever on the sum lent. Fourthly. That the borrower who had paid more than legal interest, might, within one year, recover from the lender, and his personal representatives three times the amount of such excess, instead of the single amount. They then, in their 7lh and 8th sections, embraced *the provisions of the 4th section of the old act; that the lender should be compelled to answer on oath any bill filed for a discovery of the usury ; and that upon discovering and returning the same, he should be acquitted and discharged from any other forfeiture or penalty. Their ninth section provided that whenever the borrower should file a bill for a discovery of the usury, it should not be necessary for him to pay, or offer to pay, any interest on the sum or thing loaned; but that he should deposit with the clerk, or register of the court, the principal sum admitted by him to have been loaned. This, as the revisors remarked, was intended to carry out the provisions depriving the lender of any interest, and in that respect was new. The system thus recommended by the revisors was consistent and harmonious. It ameliorated very considerably the then existing law. It secured to the lender, under all circumstances, the sum actually loaned by him ; but it deprived him of all-interest upon that sum, and subjected him to the forfeiture of three times the usurious excess received by him ; and it compelled him to discover the usury, upon a deposit of the principal merely, without the interest, and it exempted *335 negotiable paper in the hands of bona fide holders without notice, entirely from the operation of the act. This system, however, did not meet the approbation of the legislature. They rejected all the new provisions recommended by the revisors except two. The one which exempted negotiable paper in the hands of a bona fide holder from the operation of the act; the other which dispensed with the necessity on the part of the borrower, when he filed a bill of discovery, of paying, or offering to pay, any interest whatever on the sum or thing loaned.
Having considered the law as it stood before the revision of the statutes, and the proposition submitted to the legislature by the revisors, and the general character and provisions of the act finally adopted by the legislature upon the' revision, we are prepared to enter into a more minute consideration of the eighth section of the existing act, upon a construction of which the determination of the question arising in this case must depend. This section contains two distinct and independent provisions—the one prescribing the terms upon *which a discovery may be compelled in a court of chancery in a case of usury; the other relating to the terms or conditions upon which relief may be granted in similar cases. The first branch of the section provides, that whenever any borrower of any money, &c. shall file a bill in chancery for a discovery of the money, &c. taken or received, it shall not be necessary for him to pay, or offer to pay any interest whatever on the sum or thing loaned. The question which we have now to determine is whether he must offer to pay the principal 1' It will be recollected that as the law then stood, he was bound to pay, or offer to pay, both principal and interest. This was not required by any express statutory provision, but according to the es-; tablished principles upon which this branch of its jurisdiction was administered the court of chancery exacted it as a condition precedent to the compelling of the defendant to answer and make discovery. A bill which did not contain such offer was bad upon its face, and might be demurred to. The first observation, then, which occurs is this : That the original power and authority of the court of chancery to impose these, or any other terms, as the condition of compelling discovery, were not conferred by any statutory enactment. Such-authority belonged to the court, by virtue of its general equity jurisdiction. The inquiry, then, is not what authority does this section confer upon the court of chancery, but to what extent does it circumscribe and limit the jurisdiction which that court confessedly previously possessed, and was hr the constant habit of exercising. It is like the passing of a law, inconsistent with some of the provisions of a pre-existing statute. The last act is an implied repeal of the first so far as these provisions are incompatible with each other, but leaving the original law in full force and effect in all other respects. Where the legislature, therefore, with a full knowledge that by the then existing law, a borrower could not compel a discovery of the usury, without offering to pay the sum actually lent with interest, declared that for the future it should not be necessary for him to offer to pay any interest whatever, they altered the law in respect to the interest only, and left it as it stood before, in relation to the principal. Nor is this the result merely of a technical rule of construction. It comports, I have no *doubt, with the actual intention of the legislature. How natural and easy would it have been for them to have said it should not be necessary for the borrower in such cases to pay, or offer to pay, either principal or interest on the thing loaned, if they had intended to make so important and fundamental a change in this branch of the law. This view of the subject is entirely satisfactory to my mind, without dwelling upon the harshness, if not the unconstitutionality of the law, as it would exist upon the com *336 struction contended for by the counsel for the appellant. They are presented very clearly and forcibly in the opinion of the chancellor.
The second branch of this section declares that no court of equity shall require or compel the payment or deposit of the principal sum, or any part thereof, as a condition of granting relief to the borrower in any case of a usurious loan; and its construction is by no means free from difficulty. But upon the best consideration which I have been - able to bestow upon the subject, I have come to the same conclusion at which the chancellor arrived on this branch of the case. It has already been remarked that there was a class of cases in which, from the form of the security, the holder was not obliged to resort, either to a court of law or equity, to enforce them—such as bonds with warrants of attorney to confess judgments, and mortgages. In the first case the judgment could be entered up without suit, and in the latter the mortgages could be foreclosed under the statute. In cases where securities of this description were given xipon an usurious loan, the borrower, although he could prove the usury without resorting to the oath of the lender, had no oportunity of setting it up or availing himself of it at law—he was compelled to resort to a court of equity for relief. The chancellor supposes, and I agree with him in opinion, that these were the cases for which the legislature probably intended to provide in this clause ; and there is no violation of general principles, nor any particular hardship or severity upon the lender, in holding that in such cases, where relief only is asked for without any discovery from the lender, it shall be granted without requiring the payment of the money loaned. It is but abrogating a particular rule of the court of chancery, for the purpose of giving full effect *to, and defeating any evasion of the law for the prevention of usury. This construction gives effect to the terms used by the legislature, and avoids the serious difficulties and objections which certainly lie in the way of the broad interpretation contended for by the appellant. But I abstain from enlarging upon this point, as I cannot add to the force of the remarks and illustrations which the chancellor has brought to bear xipon it.
This general view is sufficient to dispose of the case. If the bill is to be considered a bill of discovery merely, then it is defective in not containing an offer to pay the sum actually loaned. If it is a bill for the discovery and relief, then it does not fall within the second clause of the 8th section ; because that clause applies only to cases in which the complainant is entitled to relief, and relief only; and this is not a case of that description, because the complainant had a perfect defence at law, if he coxxld establish the usury. The court of chancery, therefore could acquire jurisdiction of the case only on the ground of compelling a discovery. I am of opinion, therefore, that the injunction was properly dissolved, and that the decree of the chancellor ought to be affirmed.
It is not necessary in this case to decide the question whether the complainent, being a surety, is a borrower within the meaning of the 8th section. But I entertain no doubt that he is so to be considered. The term borrower is used, I apprehend, in contradistinction to lender, and was intended to designate the other party to the contract. There is no reason, in the nature of the case, why the surety should not have all the remedies and means of defence which are given to the principal.
By Senator Tracy. It is not necessary in this case to take under consideration the policy of usury laws. That is a question upon which wise men are divided, as is seen by a recent decision in this coxrrt. (Cram v. Hendricks, 7 Wendell, 569.) But if they were all united against it, yet whilst the statute remains unrepealed, it is the duty of this court to give it effect, whatever opinions some of its members, as legislators, may entertain of the wisdom of its pro *338 Visions. The law pronounces usury to be a public evil, and the law to prevent it, *lilte every other law to retain and punish public evils, is entitled to receive a liberal construction from those called to administer it. Such has been the doctrine always held by the courts in England and this country relative to the statutes against usury. How far their practice has in every, case conformed to this doctrine, it is not necessary here to inquire.
The complainant’s bill shows the case of a contract palpably usurious. This contract, by the revised statutes, is declared void. The party seeks to enforce the contract at law, and the question is, on what terms is the complainant entitled to a discovery in chancery to aid his defence.
The fourth section of the act of 1787 to prevent usury, 1 R. L. 64, enacts “that all and every who shall be liable to be sued for the same, shall be compelled to answer on oath to any bill preferred, for the purpose of discovering the money, goods or thing taken by way of usury. The second section of this act had already denoted the person liable to be sued, as him who had actually received money, goods or things for usury. Under this law, the right to a discovery was limited to cases where a person was sued to recover an usurious excess paid to him, and of course the bill for the discovery was always filed by the plaintiff at law. There is no provision made by the statute for a person against whom an usurious contract was sought to be enforced at law, to have a bill of discovery to aid his defence. The defendant in such a suit was therefore in the condition of any other defendant who seeks the aid of a court of chancery to make out his defence, and consequently subject to the general rules that regulate chancery relief. One of these rules, which met him at the very threshold, was, that “ he that will have equity, must do equityand by its application, he was compelled, before he could stay the proceedings at law, to return or to offer to return the money he had actually received, with the lawful interest thereon. The effect was, that a party making a secret usurious contract had little or nothing to fear ; the absence of proof made him safe at law, and if the debtor resorted to equity the most he could lose was the usurious excess reserved in the security; and, to compensate him *for this loss, he was sure to receive back the money actually lent and the legal interest, more promptly than he otherwise could collect it. Add to this the difficulty which the victim was likely to experience in raising the money lent and the interest, and we then understand why the practice of usury was deemed almost as safe and advantageous to the party pursuing it, as if there had been no law to prohibit it.
The circumstances which attended the passage of the present act against usury, leave no room for doubting that it was the intention of the legislature to make its provisions more effectual than those of the old law had proved to be. Without commenting on the change from “ money, goods or things” of the old law to “ money, goods or things in action” of the new, we find a most important change of provision in the 6th section. This, instead of limiting the right of discovery as it was under the old law, to be against the person liable to be sued, that is, the person who had acturally received an usurious excess, extends it so as to compel every person offending against the provisions of the act, “ to answer under oath any bill that may be exhibited against him for the discovery of any sum of money, goods, or things in action, so taken, accepted or received, in violation of the foregoing provisions or either of them.” The question that arises on the construction of this section as applicable to the present case is, whether the person who makes an usurious loan, and takes for the security of it the promissory note of the borrower, in which the usurious excess is embraced, does or does not take, accept or receive a thing in action in viola *340 tion of some provision of the statute. It is contended that although the note of a third person, given by way of usury, would be a thing in action within the meaning of the act, yet the note of the party borrowing, promising to pay the money borrowed and an usurious excess, would not be. I confess I find it difficult to perceive the distinction, one being as much in fieri as the other, and the value of both contingent. The case of Maddock v. Hamet, 7 T. R. 180, has been cited to show that taking a new note from the party for an usurious excess was not taking money so as to subject the person taking it to a qui tam suit for the penalty. But this case does not cover the present question, which is not merely *whether taking the borrower’s note for an usurious excess subjects the lender to an action to recover-as a penalty the note taken, but whether the taking of such note is contrary to any provision of the present statute.
Now if it be conceded that taking the borrower’s note, promising to pay the sum borrowed, with usury, is not taking a thing in action, within the meaning of the second section, so as to subject the party taking, to the penalty, the recovery of which is provided for in the third and fourth sections, still the taking of an agreement to take usury, to which at least it amounts, is an act in violation of the purpose of the second section, inasmuch as it is an act tending to produce the act which the section expressly prohibits, and is therefore, by necessary implication, within the prohibition, according to the old maxim : Quando aliquid prohibetur, prohibetur et oírme, per quod devenetur ad illud. 2 Coke’s Inst. 48. The fifth section declares that “ all bonds, bills, notes, assurances, conveyances—all other contracts whatsoever, whereupon or whereby there shall be reserved or taken, or secured, or agreed to be reserved or taken, any greater sum or greater value for the loan or forbearance of any money, goods, or things in action, than is above prescribed, shall be void.” The sum prescribed is, by the first section, at the rate of seven dollars in the hundred. Now, to my mind, nothing can be plainer than that the provision of the fifth section, taken in connection with the first section, should be construed to prohibit the taking of a note, or any other contract or security whereby is reserved or agreed to be reserved or taken more than seven per cent. It is true, that taking a note or other security in which usury is reserved is not prohibited in express words; but the rate of interest is prescribed, and any contract by or in which there is to be received a greater rate is declared void. Here then, is a penalty imposed ; and it is common law and common sense, that where a statute imposes a penalty for doing an act, it, by unavoidable implication, prohibits the act to be done, although there shall be no words of express prohibition ; and this point involves the whole question, whether the statute is or is not intended to prevent usury. For if, as is contended, the receiving a promissory note or other agreement for the payment of usurious interest *is not forbidden, then the statute is nugatory, or at least is deficient of one of the most natural and important provisions for preventing the evil against which it professedly is aimed. If, however, -it is construed as a law really intended to restrain usury, then the principle is applicable, that “ wherever the provision of a statute is general, everything which is necessary to make such provision effectual is supplied by the common law.” 6 Bac. Abr. 369. If, then, it is an offence against the statute for a person to loan money at an usurious rate, and to take a note or other security for the payment of the sum loaned and the usury, it must follow that the person offending in this respect has “ taken, accepted or received a thing in action,” in violation of some provision of the statute, and consequently may be compelled to answer on oath any bill that may be exhibited against him in the court of chan *342 eery for the discovery of the thing in action so taken, accepted or received. If compelled to answer, the interesting and material question which arises in this case is presented : What terms may a court of chancery impose on the party who calls on him to answer ?
This question appears to me to be as distinctly answered in the eighth section as words can answer it. It declares that no “ court of equity shall require or compel the payment or deposit of the principal sum or any part thereof, as a condition of granting relief to the borrower in any case of an usurious loan forbidden by the statute.” It is difficult for me to conceive how language can more appropriately and explicitly provide that a party seeking relief in chancery to protect himself against a suit at law on an usurious contract, shall be entitled to that relief without paying the principal sum or any part thereof. If this is not the meaning of this part of the eighth section, what meaning is to be given to it ? The chancellor intimates an opinion that it extends only to cases of usurious contracts and securities, where the complainant has the moans of establishing the usury without resorting to the oath of the defendant, but where, from the nature of the security, the borrower must resort to a court of chancery for relief. This construction admits' a proposition contested on the argument, that the mere taking of an usurious contract is a ^violation of the statute ; but it is a construction much too narrow to cover the broad language of the section which is to meet any case of an usurious loan forbidden by the statute. Now, the fact whether a contract is usurious or not, does not depend on the ability of the borrower to prove the usury without resorting to the oath of the lender; nor does the right of the borrower to be relieved from it in a court of chancery depend upon it. In both cases, that is, whether he can or cannot prove the usury without aid of the lender’s oath, he is entitled to relief on some terms ; and being entitled to relief, the statute steps in and declares what condition the court of equity shall not exact. Besides, so far as any principle of equity is concerned, it is just as hard for a man to lose money which he has actually lent, by having the usury proved by another as by himself. It is admitted that the rule that a court of chancery will not lend its aid to a party to enforce a penalty "or a forfeiture, and the maxim that he who seeks equity must do equity, relate merely to principles on which the court acts in the exercise of its general jurisdiction ; and I presume it must also be admitted that the legislature can require a court of equity to modify or restrain the application of the principles to a particular class of cases. It is clear to my mind that the legislature, in view of the acknowledged inoperativeness of the usury laws resulting from the application of these principles by courts of equity, determined to restrain the courts in the application of them, under the hope and expectation that thereafter the statute against usury, which had been “ as much in mock as mask,” might become effectual to the ends proposed. That the legislature possessed the constitutional power to do so, I have no doubt. The clause in the constitution which declares that no one shall be compelled to testify against himself in a criminal prosecution, does not reach this case ; this is not a criminal prosecution, but simply a suit to determine whether a civil contract made between parties is or is not valid, and in this respect is not different from any other case where a party, in consequence of a discovery compelled against him in equity, loses the benefit of a contract which but for the discovery he could enforce at law. Nor is it a case where the discovery sought can form *the basis of a criminal prosecution against the respondent. The taking of the note is not an indictable misdemeanor within the general provision of the revised statutes, 2 R. S. 696, § 39, for the statute against usury is intended to carry with it, and does carry with it its own sanc *343 tions. The one for taking a note or other contract or assurance covering usury, is to make the note, contract, or assurance void—beyond this forfeiture the offending party is not liable. If the common law has extended the principle of protecting a party so far as to excuse him from testifying in civil cases, where the disclosure he is called on to make, would subject him to a forfeiture or penalty, or any loss in the nature of a penalty, it is undoubtedly competent for the legislature to limit or abrogate this rule of the common law; and if this rule would have applied to the present case, it is restrained by an express and positive enactment.
The only remaining question is, whether the complainant is a borrower within the meaning of the statute. I think there is neither justice nor reason in restricting the meaning of the word borrower to the person for whose benefit the loan was made. It should be construed to mean any person who was bound by the original contract to pay the sum borrowed. If the person who actually received the money is entitled to relief, a fortiori should he be, who, though he did not receive it, is called on to pay it. But in this case, the appellant, so far as the note is evidence of his indebtedness, is strictly a borrower. He signs the note as a joint and several maker ; the loan was on the responsibility of both, and was in fact a loan to both, notwithstanding the money, when received, was for the benefit- of one alone. The respondent Harris, brings his action against both, and may recover against both on the common count for money lent, the note being conclusive proof against both of such loan. If, then, the complainant would not be allowed at law to denjr the character of borrower, it is strange if Harris, the plaintiff in the suit at law, shall be permitted to deny it to him in a court of equity. On the whole, I am fully satisfied that the complainant was entitled to the relief he asked for, without paying or offering to pay the principal sum lent or any part thereof, and consequently shall vote for reversing the chancellor’s decree.
*On the question being put, Shall this decree he reversed, 1 the members of the court voted as follows :
In the affirmative—Senators Armstrong, Crofsey, Griffin, Hubbard, Qtjackenboss, Stower, Tracy, Van Sci-iaick and Wescott—9.
In the negative—The President, Chief Justice Savage, Justices Sutherland and Nelson, and Senators Conklin, Deitz, Edmonds, Gansevoort, Gere, Lansing, Lynde and Macdonald—12.
Whereupon the decree of the Chancellor was affirmed, with costs.